**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 09:04 AM May 31, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| ROBERT CHARLES WELLING, ) | CASE NO. 11-60199 |
| ) | |
| Debtor. ) | ADV. NO. 11-6074 |
| _____ ) | |
| UNITED STATES TRUSTEE, ) | JUDGE RUSS KENDIG |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF OPINION (NOT** |
| v. ) | **INTENDED FOR PUBLICATION)** |
| ) | |
| ROBERT CHARLES WELLING, ) | |
| ) | |
| Defendant. ) | |

On September 9, 2011, the United States Trustee ("UST") filed a complaint objecting to the discharge of Debtor Robert Charles Welling ("Debtor"). UST alleges that Debtor failed to keep books or records from which his financial affairs could be determined and therefore is not entitled to a discharge. 11 U.S.C. § 727(a)(3). Debtor argues against denial of his discharge. The court held an evidentiary hearing on January 23, 2012, followed by the submission of post-trial briefs by the parties.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the referral order entered by the United States District Court for the Northern District of Ohio on April 4, 2012, superseding

1

the general order of reference entered on July 16, 1984.[1]  In accordance with 28 U.S.C. § 1409, venue in this district and division is proper.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).  This Memorandum of Opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation.  The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTUAL BACKGROUND

Debtor is a thirty-year old high school graduate.  His employment history includes work on his family farm, employment with Kimble Clay & Limestone and his current position as a union operating engineer.  In 2007, he started his own business, Wellco Industries ("Wellco") which he described as a "dba" and a sole proprietorship.  Wellco was a land clearing and logging company from "stump up."  Wellco would clear land, turn the tree into chip, and sell the chip to a manufacturer to make cardboard product.  At its peak, Debtor employed six to eight people.

Debtor operated the field work of Wellco.  His former mother-in-law, Sharon Carl, handled the office work for Wellco, including payroll, taxes and accounting.  Debtor had no experience in this area and took a "hands-off" approach to this side of the company.  He has no specialized knowledge or training in this area and testified that a woman in his life, a wife, girlfriend or his mother-in-law, always handled financial matters for him, including the business office work and his personal taxes.  He also referenced relying on the advice of his banker, Bob Boss, in business financial matters.

At trial, Debtor's grasp of the financials of the business was extremely limited.  He admitted to seeing various documents but had no meaningful recollection or understanding of the figures.  He conceded he had no way of knowing whether any of the documents prepared for the business were accurate.  Although he referenced gross figures, and testified as to numbers from time to time, the court is unconvinced of the reliability of any of his statements in this area.  He simply doesn't know.  When the UST inquired about accounts payable ledgers, his response was "what's that?"  However, the 341 transcript provides a slightly different perspective of his knowledge base.  The transcript indicates more familiarity with expense and income figures.

His minimal understanding of any business matters was obtained from someone upon whom he relied, including his mother-in-law or his banker.  For example, he said that if money was tight, Ms. Carl would tell him they needed more chips or to cut hours.  Ms. Carl would prepare financial statements for the bank and he would sign them.  As he stated, he trusted Ms. Carl as he would his own mother.  Although he admitted that he knew there were problems in late 2009, Ms. Carl continued to work for Wellco.  The problems were so bad that the business account was overdrawn $100,000 and any additional payments had to be specifically authorized by Mr. Boss.  Debtor stated he contacted Mr. Boss about the issue and was told it was "okay," the

---

[1] At the time this proceeding was filed, the applicable general order of reference dated July 16, 1984 was in effect.

bank was monitoring the situation and saw what was coming in and going out. According to Debtor, he was working with Mr. Boss on a day-to-day basis.

Ms. Carl handled the office work from the time the business started to some point in 2010. Debtor's reliance on Ms. Carl was not unfounded. According to debtor, she worked in accounting at FreshMark, a regional meatpacker, for twenty-two years. She currently is employed by a local accounting firm. She testified that she was taking classes to complete her degree. Additionally, she had hands-on experience as the sole owner of a tanning business and a bookkeeping service. Ms. Carl was almost exclusively responsible for Wellco's financial information and mainly relied on the QuickBooks program to keep Wellco's records.

It is unclear when she stopped working for Wellco. There was a breakdown in her relationship with Debtor so her daughter took over handling the office work for the business. However, Ms. Carl clearly helped her daughter and therefore remained involved with Wellco. Ms. Carl had no involvement in assisting Debtor with the bankruptcy filing. For that, Debtor provided documents and information to his attorney, who assisted with the preparation of the schedules, statements and other bankruptcy paperwork.

Not only was Ms. Carl not involved in the bankruptcy filing, she was also an albatross. She was in possession of numerous Wellco documents and failed, even upon request, to provide those documents to Debtor until after the UST's adversary complaint was filed. Debtor stated that there was animosity between them because Ms. Carl was the co-signer on significant business debt.[2] Additionally, Debtor's marriage to her daughter deteriorated, resulting in a final divorce decree in 2011. He testified that he asked for the documents every time he picked up his daughter and the record shows requests were made by counsel as well. It was only after this adversary proceeding was filed that she produced requested documents.

Although Ms. Carl failed to timely turn over documents in her possession, Debtor was less than helpful with documents that were under his control. At the hearing, the chapter 7 trustee Anne Piero Silagy ("Trustee") testified that she was seeing several of the documents, presented by Debtor as exhibits, for the first time. Catherine Lowman, the UST's analyst, also provided similar testimony.

## **DISCUSSION**

The UST seeks to deny Debtor a discharge based on his failure to provide adequate financial records from Wellco. The code provision upon which UST relies, § 727(a)(3), states in its entirety:

(a) The court shall grant the debtor a discharge, unless—

---

2 Although she is listed as an unsecured creditor for an "unknown" amount in Debtor's schedules, she testified that Debtor owes her in the neighborhood of $553,000.

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

11 U.S.C. § 727(a)(3). As the plaintiff, UST bears the burden of proof that Debtor did not maintain adequate records and therefore is not entitled to a discharge. Fed.R.Bankr.P. 4005. Many courts employ a two part analysis, requiring '(1) that the [D]ebtor failed to keep or preserve adequate records; and (2) "that such failure makes it impossible to ascertain the [Debtor's] financial condition and material business transactions."' Pereira v. Young (In re Young), 346 B.R. 597 (Bankr. E.D.N.Y. 2006) (citing Jacobowitz v. The Cadle Co. (In re Jacobowitz), 309 B.R. 429, 436 (S.D.N.Y. 2004) (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1232 (3rd Cir. 1992))). If UST is successful, the burden shifts to the Debtor to demonstrate a justification for the lack of records. Robertson v. Dennis (In re Dennis), 330 F.3d 696 (5th Cir. 2003).

## I. ADEQUACY OF RECORDS

As the statute states, the purpose of the record-keeping requirement is to allow interested parties to ascertain a debtor's financial condition. In Meridian Bank, the court further explained:

> The Bankruptcy Code does not specifically require a debtor seeking a discharge to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt and his business transactions for a reasonable period in the past may be ascertained.'" In re Decker, 595 F.2d 185, 187 (3rd Cir. 1979 (citations omitted). Thus, in order to invoke the protection of the bankruptcy court, the debtor must maintain and preserve adequate records. If the debtor fails to do so, there must be some justification.

958 F.2d at 1230-31. The nature and type of records that a debtor is obligated to maintain are assessed 'against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education and experience.' Ayers v. Babb (In re Ayers), 358 B.R. 343 (Bankr. E.D. Tenn. 2006) (quoting Wazeter v. Michigan Nat'l Bank (In re Wazeter), 209 B.R. 222, 227 (W.D. Mich. 1997) (other quotation omitted)). Factors which bear on this inquiry

4

include:

> (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience and sophistication; (5) the customary business practices for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor.

Jahn v. Morgan (In re Morgan), 2011 WL 864963 (Bankr. E.D. Tenn. 2011) (citing Hendon v. Lufkin (In re Lufkin), 393 B.R. 585, 593 (Bankr. E.D. Tenn. 2008) (quoting Pereira v. Kowalski (In re Kowalski), 316 B.R. 596, 602 (Bankr. E.D.N.Y. 2004))).

The record-keeping duty clearly rests with Debtor. *See* Strzesynski v. Devaul (In re Devaul), 318 B.R. 824 (Bankr. N.D. Ohio 2004); Caneva v. Sun Comty. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755 (9th Cir. 2008) (citing Peterson v. Scott (In re Scott), 172 F.3d 959, 969 (7th Cir. 1999) (other citation omitted)). Debtor argues he satisfied his duty, relying on the documents that were available at the time he filed and the documents later provided by Ms. Carl. The problem in this case is that significant records were not considered by either the chapter 7 trustee or UST because initially they were not available for inspection, so it is not clear whether the records were adequate. Ms. Carl produced documents after the adversary was filed that have not been reviewed.

The key, however, is not what records may exist. The pivotal point is what records are produced. It is not enough that Ms. Carl used QuickBooks and had records that were not in Debtor's possession. Debtor's duty includes making the records which are kept and maintained available to interested parties, including trustees and creditors. Peters v. Michael (In re Michael), 433 B.R. 214 (Bankr. N.D. Ohio 2010) (citation omitted); Wazeter, 209 B.R. 222 (W.D. Mich. 1997); In re Juzwiak, 89 F.3d 424 (7th Cir. 1996) (other citations omitted). UST ably demonstrated that Debtor did not meet this burden.

Not only did Debtor not have financial records from Wellco in his possession when he filed, but the documents he did provide were not complete. The chapter 7 trustee, Anne Piero Silagy, testified that she had not seen full copies of Debtor's tax returns until she saw the exhibits when preparing for trial.

Gaps in information were also apparent from the bank statements. Although the chapter 7 trustee and UST eventually obtained the bulk of the bank statements from the main business account with First Knox, the statements require explanation because the record was not complete

5

and the nature of the transaction is not always apparent from a description in a bank statement. This is especially true with debits and transfers. Sitting a box of financial documents in front of a trustee does not satisfy Debtor's burden. Krohn v. Frommann (In re Fromman), 153 B.R. 113 (Bankr. E.D.N.Y. 1993). A trustee or a creditor must be able to make sense of the information.

More troubling, however, is the failure to provide information on other bank accounts that were being used prior to filing and before Wellco ceased operations. Debtor testified that in the summer of 2010, to avoid garnishment by First Knox, he began using third-party accounts,[3] including an account opened by his ex-wife. Later that year, money was funneled through the account of Steven Stefaniak and his girlfriend. Debtor's exhibit forty-eight, a copy of his ex-wife's check ledger and a transaction detail, was admitted at trial. It appears to show the deposits from Smurfit-Stone Container and business expenses. In spite of the fact it appears to contain relevant financial information, both the chapter 7 trustee and the UST's analyst testified that they were seeing this document for the first time and Debtor had not previously provided it for review. The same was true of Debtor's exhibit thirty-nine, a ledger for the period September 3, 2010 through the bankruptcy filing date.

According to Debtor, the bank records provide a foundation to ascertain his financial condition. This may be true if the bank records were complete and if it the transactions were clearly identified or explained, but that it not the situation. It is clear that the chapter 7 trustee and UST were provided with incomplete records in a vacuum. This does satisfy Debtor's duties under the bankruptcy code.

In addition to the incomplete information, the information that was produced was inadequate. For example, Defendant's exhibit three, an unsigned 2009 federal income tax return, shows adjusted gross income of negative $325,826.00 while the signed copy, dated September 1, 2011 by the preparer, shows negative net income of $121,132.00. (Defendant's Exhibit 4). The QuickBooks profit and loss statement for 2009 shows negative net income of $146,356.90. (Defendant's Exhibit 38). Debtor was also unable to explain any inconsistencies between the documents. He consistently directed the court to Ms. Carl, the person who handled Wellco's finances.

Wellco was not engaged in complex or unusual activities, nor was it a monolith. It was a small business run by a guy with no financial background who was willing to do hard, physical labor and leave the bookkeeping to someone with more knowledge. The basic records, including bank accounts, tax returns, profit and loss statements, and accounts payable and receivable information, would be typical items kept and maintained for similar businesses. Ms. Carl indicates these records were maintained, although their adequacy is unknown. The court finds that Wellco was outside the parameters of "typical" because of its unusually large amount of debt resulting from the large capital equipment necessary for the work.[4] Consequently, the court

---

3 Debtor testified that he did this at the bank's direction and knowledge. Also, his use of Mr. Stefaniak's account is documented in the 341 meeting transcript from May 3, 2011.
4 The secured debt total on Schedule D exceeds $1,000,000.00; unsecured priority debt totals $143,150.22; and the

6

would expect a more detailed inquiry to ensue, likely resulting in requests for additional documentation on secured debt transactions, leases, etc.   Debtor didn't clear the first hurdle.

A review of the record and testimony from the trial convinces the court the documentation that Debtor did provide was not sufficient to allow the trustee or creditors to ascertain his financial condition.   Debtor could shed no light on Wellco's financial condition.   At most, he may have been able to relate his estimation of gross earnings from his largest purchaser of chip, Smurfit-Stone Container.   However, the court would be hard pressed to rely on his estimation for this figure.   He had no desire to be involved in the financial aspect of the business and appears blissful in his ignorance.   The information provided was incomplete and inconsistent and inadequate for either a trustee or creditor to ascertain his financial condition prior to filing bankruptcy.   UST demonstrated that Debtor failed produce records in conformity with his duty under the bankruptcy code.   To avoid the denial of his discharge, Debtor must show a justification for his failure.

## II.     JUSTIFICATION

Courts employ an objective standard to determine if a debtor's lack of records is justified. Allied Bus. Brokers, Inc. v. Amro (In re Amro), 326 B.R. 901 (B.A.P. 6th Cir. 2005) (unpublished) (citations omitted); Lansdowne v. Cox (In re Cox), 41 F.3d 1294 (9th Cir. 1994).   "[T]he debtor's honest belief that he does not need to keep the records in question, or that his records are sufficient, or his statement that it is not his practice to keep additional records, does not constitute justification for failure to keep or preserve records under § 727(a)(3)."   State Bank of India v. Sethi (In re Sethi), 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000) (citing AID Auto Stores, Inc. v. Pimpinella (In re Pimpinella), 133 B.R. 694 (Bankr. E.D.N.Y. 1991)).   Courts look at the facts of each case to determine if Debtor's actions, or inaction, is reasonable under the circumstances.

Debtor proffers three justifications for the failure to supply records.   His primary argument is focused on Ms. Carl's lack of cooperation, but he also points to his cooperation and his understanding that Trustee would conduct a 2004 exam of Ms. Carl.

Debtor testified that he requested documents from Ms. Carl on numerous occasions, both by telephone and also in person when he picked up his daughter.   Additionally, Exhibit twenty-eight shows formal requests to Ms. Carl's attorney.   Ms. Carl admitted that she held records for Wellco and offered many excuses for her failure to timely turn over the documents. There is no dispute that she was a hindrance in the process.

Ms. Carl was clearly the go-to person for Wellco from an accounting and financial perspective.   She was in possession of the QuickBook records and the bulk of the financial information.   The court finds that Ms. Carl is responsible for the failure to produce substantial financial documentation from Wellco's operations.   The record is replete with Debtor's efforts to obtain the records.   The court accepts her stonewalling as justification for Debtor's lack of

---

total unsecured debt listed on Schedule F is close to $750,000.00.

7

records. Debtor rain a dirty, physically uncomplicated business, but one that required large capital equipment. He has zero financial acumen. He totally relied on Ms. Carl for everything related to finance and financial records. This is not unusual for people in these types of businesses that require hard work in a dirty environment. They are frequently, perhaps normally, owned by people able to do the physical work who rely almost exclusively on others for the other aspects of the business.

One fact that helps to tip the scale in Debtor's favor is Ms. Carl's personal stake in this matter. She is co-liable on debt Debtor seeks to discharge and Debtor owes her substantial sums. If he obtains a discharge, she will personally bear the weight of this debt. Consequently, there is a direct benefit to her in blocking his discharge. The court cannot say this was her sole motivation in refusing to provide documents but the possibility cannot be overlooked. Moreover, Debtors' marriage termination with Ms. Carl's daughter obviously added to the problem. Ms. Carl has zero financial or emotional interest in Debtor's life improving and that was abundantly clear. Based upon Debtor's knowledge and training, his course of action was initially logical. By the time of Debtor's belated awakening, it was too late. Since objections to discharge are construed in favor of debtors, the court is compelled to view this in Debtor's favor.

Undoubtedly, Debtor could have been more proactive. He did, however, fully comply with requests for documents that were more atypical. For example, at the request of Trustee, he provided a copy of a police report related to stolen property (Exhibit D, p. 11), he requested information from PSC Metals on materials scrapped by him for a four year period (Defendant's Exhibit 45), and provided information on an unclaimed vehicle transferred to Brechbuhler Truck Sales, LLC. (Defendant's Exhibit 44). He also authorized Catherine Lowman to speak with the IRS employee handling a federal tax audit. Debtor was not uncooperative. Additionally, Trustee did reference the possibility of doing a 2004 exam of Ms. Carl. (Exhibit D, p. 46). Consequently, Debtor's inaction may reasonably have been couched in his understanding that Trustee would conduct a 2004 if needed. While this may not have been Trustee's duty, Debtor's perception is believable. The court finds Debtor's failure to produce documents was justified.

The court will immediately enter an order in conformity with this opinion.

\# \# \#

**Service List:**

Dean Wyman
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Aveneue, Suite 441
Cleveland, Oh 44114-1240

Nicole L. Rohr
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

Robert Charles Welling
617 Perry Drive
Canton, OH 44708